UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
**PAVLO POPOVYCHENKO**, as Parent and Natural Guardian
of **V.P.**, and **PAVLO POPOVYCHENKO**, Individually,

                              Plaintiff,                        **25-cv-8906**

-against-

**MELISSA AVILÉS-RAMOS**, in her official capacity as
Chancellor of the **NEW YORK CITY DEPARTMENT OF
EDUCATION**, and the **NEW YORK CITY DEPARTMENT
OF EDUCATION**,

                              Defendants.
------------------------------------------------------------------------X

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT**</u>

Jeffrey Arlen Spinner, Esq. (JS22178)
Liberty & Freedom Legal Group
*Attorneys for Plaintiff*
105 East 34th Street, Suite 190
New York, NY 10016
jeff@pabilaw.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………… i

PRELIMINARY STATEMENT………………………………………………….1

LEGAL STANDARD…………………………………………………………….3

STANDARD OF REVIEW……………………………………………………….5

STATEMENT OF FACTS……………………………………………………….6

ARGUMENT…………………………………………………………………….10

I.    PLAINTIFF IS ENTITLED TO REIMBURSEMENT FOR THE
      UNILATERAL PLACEMENTS FOR BOTH 2023-2024 AND 2024-2025 ESYS….10

      A.    NO DEFERENCE IS OWED TO THE SRO'S ADMINISTRATIVE
            FINDINGS ON PRONG III OF THE *BURLINGTON/CARTER* TEST………10

      B.    EQUITIES FAVOR PLAINTIFFS FOR REIMBURSEMENT
            FOR ALL ELEMENTS OF THE PRIVATE PLACEMENT FOR
            THE 2023-2024 ESY……………………………………………………..10

      C.    EQUITIES FAVORED THE PLAINTIFF FOR REIMBURSEMENT
            FOR THE 1:1 NURSING FOR BOTH THE 2023-2024 AND 2024-2025
            ESYS ..…………………………………………………………………14

      D.    EQUITIES FAVOR THE PLAINTIFF FOR REIMBURSMENT FOR
            THE FULL AMOUNT OF TRANSPORTATION COSTS FOR THE
            2024-2025 ESY. …………………………………………………………17

      E.    THE CONDUCT OF THE DOE MUST BE CONSIDERED IN THE
            ANALYSIS OF PRONG III OF THE BURLINGTON/CARTER TEST……. 21

II.   THE SRO'S DECISION COMPLETELY DENYING FUNDING FOR THE
      2023–2024 SCHOOL YEAR RUNS AFOUL OF THE LETTER AND THE
      SPIRIT OF THE ADA AND MUST BE REVERSED……………………….22

III.  PLAINTIFF IS ENTITLED TO AN AWARD OF PENDENCY FOR BOTH
      SCHOOL YEARS……………………………………………………….23

IV.   PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES……….25

CONCLUSION  ……………………………………………………………………26

## Table of Authorities

**Cases**                                                                                                    **Pages**

*A.M. v. Cornwall Cent. Sch. Dist.,*
   752 F.3d 145 (2d Cir. 2014) ...................................................................................4, 23, 24

*Abrams v. New York City Dep't of Educ., No. 20-CV-5085 (JPO),*
   2022 WL 523455 (S.D.N.Y. Feb. 22, 2022) ...........................................................20

*Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.,*
   990 F.3d 152 (2d Cir. 2021) ...............................................................................5

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.,*
   532 U.S. 598 (2001) ...........................................................................................25

*C.F. ex rel. R.F. v. New York City Dep't of Educ.,*
   746 F.3d 68 (2d Cir. 2014) ...............................................................................5

*C.L. v. Scarsdale Union Free Sch. Dist.,*
   744 F.3d 826 (2d Cir. 2014) .............................................................................11

*C.U. v. New York City Dep't of Educ.,*
   23 F. Supp. 3d 210 (S.D.N.Y. 2014) ..................................................................21

*Cedar Rapids Cmty. Sch. Dist. v. Garret F.,*
   526 U.S. 66 (1999) .............................................................................................16

*D.A. v. New York City Dep't of Educ.,*
   769 F.Supp.2d 403 (S.D.N.Y. 2011) ..................................................................11

*Davis v. Banks,*
   2023 U.S. Dist. LEXIS 160092, 2023 WL 5917659 (S.D.N.Y. Sept. 11, 2023) .....................18

*Doe v. Brookline Sch. Comm.,*
   722 F.2d 910 (1st Cir. 1983) .............................................................................22

*Doe v. East Lyme Bd. of Educ.,*
   790 F.3d 440 (2d Cir. 2015) .............................................................................24

*E.M. v. New York City Dep't of Educ.,*
   758 F.3d 442 (2d Cir. 2014) .............................................................................23

*Ferreira v. Aviles-Ramos,*
   120 F.4th 323 (2d Cir. 2024) ...........................................................................10, 13

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter,*
   510 U.S. 7 (1993) .............................................................................................4, 23

*GB v. New York City Dep't of Educ.,*
   145 F. Supp. 3d 230 (S.D.N.Y. 2015) ................................................................21

*J.M. v. New York City Dep't of Educ.*,
  171 F. Supp. 3d 236 (S.D.N.Y. 2016) ..................................................................5

*Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*,
  550 F. Supp. 2d 420 (S.D.N.Y. 2008) .................................................................5

*K.R. ex rel. M.R. v. Bd. of Educ. of Brentwood Union Free Sch. Dist.*,
  66 F. Supp. 2d 444 (E.D.N.Y. 1999) ................................................................26

*M.C. v. N.Y.C. Dep't of Educ.*,
  2015 U.S. Dist. LEXIS 93956, 2015 WL 4464102 (S.D.N.Y. July 15, 2015) .........................11

*M.H. v. New York City Dep't of Educ.*,
  685 F.3d 217 (2d Cir. 2012) ...........................................................................5

*M.R. v. Ridley Sch. Dist*,
  744 F.3d 112 (3d Cir. 2014) ..........................................................................24

*M.R. v. Ridley Sch. Dist.*,
  868 F.3d 218 (3d Cir. 2017) ..........................................................................26

*M.S. v. Yonkers Bd. of Educ.*,
  231 F.3d 96 (2d Cir. 2000) ...........................................................................12

*Mr. A. v. Greenwich Bd. of Educ., 15-cv-00203 (CSH)*,
  2016 U.S. Dist. LEXIS 94431 (D. Conn. July 21, 2016) ......................................21

*Navarro Carrilo v. New York City Dep't of Educ.*,
  384 F. Supp. 3d 441 (S.D.N.Y. 2019) ..............................................................25

*Pardini v. Allegheny Intermediate Unit*,
  420 F.3d 181 (3d Cir. 2005) ..........................................................................25

*R.G. v. New York City Dep't of Educ.*,
  980 F. Supp. 2d 345 (E.D.N.Y. 2013) .................................................................5

*Rutherford v. Fla. Union Free Sch. Dist., No. 16-CV-9778 (KMK)*,
  2019 WL 1437823 .......................................................................................4

*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*,
  471 U.S. 359 (1985) ....................................................................................4

*Susquenita Sch. Dist. v. Raelee S. By &Through Heidi S.*,
  96 F.3d 78 (3d Cir. 1996) .............................................................................24

*SJB ex rel. Berkhout v. New York City Dep't of Educ., No. 03-CIV-6653 (NRB)*,
  2004 WL 1586500 (S.D.N.Y. July 14, 2004) .......................................................4

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ....................................................................................23

*Still v. DeBuono*,
  101 F.3d 888 (2d Cir. 1996) .................................................................19, 20

*T.K. v. New York City Department of Education*,
  810 F.3d 869 (2d Cir. 2016) .........................................................................21

*T.Y. v. New York City Dep't of Educ.*,
  584 F.3d 412 (2d Cir. 2009) .......................................................................5, 22

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*,
  550 U.S. 516 (2007) ........................................................................................3

*Y.F. v. New York City Dep't of Educ., No. 1:21-CV- 00711 (MKV)*,
  2021 WL 1164571 (S.D.N.Y. March 26, 2021) ...............................................4

*Z.A.R. v. City of N.Y.*,
  No. 19-cv-2615, 2022 U.S. Dist. LEXIS 176421 (E.D.N.Y. Sep. 27, 2022) ...........................21

**Statutes**

20 U.S.C. § 1400 ..............................................................................................1, 22

20 U.S.C. § 1401 ...............................................................................................3, 18

20 U.S.C. § 1412 ............................................................................................3, 7, 22

20 U.S.C. § 1415 ...........................................................................3, 4, 5, 10, 23, 25

42 U.S.C. § 1983 ..................................................................................................4

§ 1412 ...............................................................................................................13

§ 1412(a)(1)(A) ....................................................................................................3

§ 200.5 ................................................................................................................3

**Other**

34 C.F.R. § 300.503 .............................................................................................3

34 CFR § 300.34[a] ............................................................................................18

8 NYCRR § 200.1[ww] .......................................................................................18

8 NYCRR §200.5(j)(4)(i) ....................................................................................12

Educ. Law § 4401[2] ..........................................................................................18

Educ. Law §§ 4401[1] .........................................................................................18

Fed. R. Civ. P. 56. R ............................................................................................5

## PRELIMINARY STATEMENT

Plaintiff PAVLO POPOVYCHENKO ("Plaintiff" or "Parent"), respectfully submits this Memorandum of Law in support of his Motion for Summary Judgment. This action seeks to enforce Plaintiff's and V.P.'s ("V.P." or "Student") rights under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. (the "IDEA"). Specifically, this action seeks an order modifying SRO Decision No. 25-055 by (1) directing reimbursement for tuition, transportation, and nursing services for the 2023–2024 extended school year ("ESY"), as DOE conceded denial of a free and appropriate public education ("FAPE") and the SRO erred in denying all relief despite the appropriateness of the unilateral placement; (2) reversing the SRO's 20% reduction in transportation reimbursement for the 2024–2025 ESY, as the record contains no evidence of over-billing, misuse, or inequitable conduct by the Parent, and full reimbursement is required; (3) reversing the SRO's denial of nursing services, as the record demonstrates that such services were medically necessary to ensure the Student's safe access to education, and at most any concern about scope would justify a proportional adjustment, not wholesale denial, such that full reimbursement for nursing services for the 2023-2024 and 2024-2025 ESYs is warranted.

After expressing that the Individualized Education Programs ("IEPs") proposed by DOE were deficient and receiving no adequate response, Plaintiff unilaterally placed V.P. at the International Academy for the Brain ("iBRAIN") for the 2023–2024 and 2024–2025 ESYs. Plaintiff timely filed Due Process Complaints ("DPCs") against the Defendants under the IDEA and New York State Education Law Article 89, alleging that DOE failed to offer V.P. a FAPE for each school year, seeking reimbursement for private school tuition, transportation, and 1:1 nursing costs for each school year, and seeking funding for pendency placements.

The Impartial Hearing Officer ("IHO") entered an order consolidating the two DPCs into one

1

proceeding. The IHO erroneously issued an interim pendency order stating that V.P.'s pendency placement was in a New York City specialized school. After a due process hearing, the IHO found the Defendants denied V.P. a FAPE for both school years, that iBRAIN was not an appropriate placement for V.P. for either school year, and that equitable considerations did not favor Plaintiff's claims for reimbursement for the private placement for either school year. Plaintiff timely filed an administrative appeal on the bases that the IHO erred in her findings. In Decision No. 25-055, the SRO determined that the IHO was correct in determining that DOE denied V.P. FAPE for both school years but erred in finding that iBRAIN was not an appropriate placement for both years. The SRO further determined that the IHO did not err in finding that equitable considerations weighed against the parent for any reimbursement for the 2023-2024 ESY. Upon review of the equities analysis for the 2024-25 ESY, the SRO determined that the IHO did not err in finding that the 1:1 nursing services were excessive and, therefore, reimbursement was not required, but that the IHO erred in finding that the private transportation services were not appropriate for the school year. The SRO ordered DOE to directly pay the private transportation costs but determined the award should be reduced by 20 percent based on the equities.

For the reasons explained below, this Court should enter summary judgment in favor of Plaintiff and enter an order: (1) directing reimbursement for the tuition, transportation, and nursing services for the portion of the 2023–2024 ESY that V.P. attended, as DOE conceded denial of a FAPE and the SRO erred in denying all relief despite the appropriateness of the unilateral placement; (2) reversing the SRO's 20% reduction in transportation reimbursement for the 2024–2025 ESY, as the record contains no evidence of over-billing, misuse, or inequitable conduct by the Parent, and full reimbursement is required; (3) reversing the SRO's denial of nursing services, as the record demonstrates that such services were medically necessary to ensure the Student's safe access to

2

education; (4) alternatively, directing DOE to pay for the pendency placement at iBRAIN, including transportation and nursing expenses, for both school years; and (5) declaring that Plaintiff is the prevailing party and entitled to attorneys' fees and costs under 20 U.S.C. § 1415(i)(3)(B)(i).

## LEGAL STANDARD

The IDEA requires school districts to provide a FAPE to all students with disabilities. 20 U.S.C. § 1412(a)(1)(A). The IDEA mandates that school districts evaluate "all children with disabilities . . .who are in need of special education services." 20 U.S.C. § 1412(a)(3). School districts must develop an IEP for each child with a disability to provide a FAPE tailored to their unique needs. 20 U.S.C. § 1401(a)(20). The IDEA's procedural safeguards ensure that each student with a disability receives a FAPE. 20 U.S.C. § 1415(a). After an IEP is created for a student with disabilities, the IDEA's procedural safeguards allow the student and/or the student's parent to challenge that IEP. *See* 20 U.S.C. § 1415; *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007). This process begins with the filing of a DPC.

After an IHO is assigned, a preliminary conference takes place where parents discuss their concerns with the school district in an attempt to reach an agreement. 20 U.S.C. § 1415(f)(1)(B)(i)(IV). The district has thirty days to resolve the issue to the parents' satisfaction. 20 U.S.C. § 1415(f)(1)(B)(ii). Parents may request an impartial due process hearing if the agency does not resolve the issue within that timeframe. 20 U.S.C. § 1415(f)(1)(A). New York has a two-tier administrative process that includes hearings at the IHO level and administrative appeals at the SRO level. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)(1); *see* 20 U.S.C. § 1415(b)(6)-(7); 34 C.F.R. § 300.503(a)(1)-(2), § 300.507(a)(1). After the hearings, an IHO issues a Findings of Fact and Decision ("FOFD"). If the IHO finds that a FAPE was not provided, the IHO determines whether the parent's unilateral placement was appropriate and, if so, whether equitable considerations

3

require a reduction in the parent's relief. A school district must pay for a program selected by a parent if (1) the educational program recommended by the school district was inadequate or inappropriate, (2) the program selected by the parent was appropriate, and (3) the equities support the parent's claim. These three factors, or "prongs," comprise the *Burlington/Carter* test. *T.M. ex- rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014); *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 15 16 (1993)); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372–74 (1985).

If aggrieved, either party can appeal the FOFD to the New York State Department of Education's Office of State Review. After the parties brief the relevant issues, an SRO issues a decision sustaining, reversing, or modifying the IHO's FOFD, dismissing the parties' appeal or remanding the matter to the IHO. A party aggrieved by the SRO's decision can appeal to the state or Federal Court. 20 U.S.C. § 1415(i)(2)(A).

Federal district courts, under 42 U.S.C. § 1983, also have "subject-matter jurisdiction to enforce favorable administrative decisions rendered under the provisions of the IDEA." *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2019 WL 1437823, at *25 (S.D.N.Y. March 29, 2019); *see also Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*, No. 1:21-CV- 00711 (MKV), 2021 WL 1164571 (S.D.N.Y. March 26, 2021). "To uphold the IDEA's purpose of providing educational services to disabled children, parents must be able to choose litigation if they believe that is necessary to effectively enforce orders given by IHOs." *SJB ex rel. Berkhout v. New York City Dep't of Educ.*, No. 03-CIV-6653 (NRB), 2004 WL 1586500, at *4 (S.D.N.Y. July 14, 2004).

Courts have noted that "[s]ummary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions" but, unlike the standard for motions

for summary judgment in other civil actions, "[t]he inquiry . . . is not directed to discerning whether there are disputed issues of fact, but whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*, 550 F. Supp. 2d 420, 429 (S.D.N.Y. 2008). Thus, a motion for summary judgment in an IDEA case in the Second Circuit serves as a procedural mechanism, rather than a traditional summary judgment motion. This process is essentially an appeal from, or request to enforce, an administrative determination, not a typical summary judgment motion. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012).

## STANDARD OF REVIEW

The Court's review involves an independent examination of the administrative record and may include additional evidence if requested by a party. The decision is based on the preponderance of the evidence, and the Court is required to grant appropriate relief as determined by this standard. 20 U.S.C. § 1415 (Procedural safeguards); *M.H.*, 685 F.3d 217; *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009); *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152 (2d Cir. 2021). Disputed issues of fact do not defeat the motion, which is a key difference from ordinary summary judgment motions under Fed. R. Civ. P. 56. *R.G. v. New York City Dep't of Educ.*, 980 F. Supp. 2d 345 (E.D.N.Y. 2013); *J.M. v. New York City Dep't of Educ.*, 171 F. Supp. 3d 236 (S.D.N.Y. 2016). "The role of the federal courts in reviewing state education decisions under the IDEA is circumscribed." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014). The standard of review "requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete de novo review." *Id.* (quoting *M.H.*, 685 F.3d at 244).

5

## STATEMENT OF FACTS

### V.P.'s Educational Needs

V.P. was six years old at the start of the 2023-2024 ESY and seven years old at the start of the 2024-2025 ESY. [R. 235]. V.P. sustained a brain-injury caused by a perinatal stroke. [*Id.*]. V.P. has been diagnosed with, among other conditions, quadriplegia, cerebral palsy, gastroesophageal reflux disease, aphasia, dysphagia, severe developmental delay, and limitations in vision. [R. 235, 267, 352-3]. The severe nature of V.P.'s brain injury has adversely impacted her educational skills, abilities, and performance. [*Id.*]. V.P. is non-verbal and non-ambulatory and requires assistance with all activities of daily living. [R. 351]. V.P. cannot perform any daily activities independently and requires 24-hour supervision. [*Id*]. Because of these needs and delays, V.P. has highly intensive management needs, requiring a significant degree of individualized attention and intervention throughout the school day. [R. 288-350].

After evaluations at iBRAIN, it was determined V.P. requires a small, highly-structured classroom offering an educational program delivered via a 1:1 instructional model, with a full-time 1:1 paraprofessional during the school day. [R. 288, 290]. Additionally, she requires the following related services per week: Physical Therapy - 5 times/60 minutes [R. 280-1, 328]; Occupational Therapy - 5 times/60 minutes [R. 284, 342]; Speech-Language Therapy - 5 times/60 minutes [R. 280, 338]; Music Therapy - 3 times/60 minutes [R. 286, 343]; Assistive Technology - 1 time/60 minutes [R. 278, 335]; Vision Education Services - 2 times/60 minutes [R. 277, 334]. Based on her highly intensive management needs, it was determined that V.P. requires a class size of 6:1:1. [R. 290, 323]. It was further determined that V.P. requires specialized transportation. [R. 291, 348]. In February 2024, V.P. underwent a procedure to insert a gastronomy tube, such that all nutrition and hydration had to be administered via the G-tube at school by a 1:1 nurse. [R. 434,

6

435, 345-6]. Accordingly, V.P. began attending iBRAIN in October 2023 for this specialized program. [R. 883].

**Administrative Proceedings**

On October 20, 2023, a Committee on Special Education ("CSE") was convened to determine if V.P. was eligible for special education services. [R. 11]. The CSE determined that V.P., a child with multiple disabilities, was eligible for special education services, recommended a special education classroom for medically fragile students and recommended specialized transportation, as V.P. uses a wheelchair. [R. 351-367]. Other than the specialized transportation, the IEP did not include any related services. [R. 351-367]. DOE did not conduct any evaluations as required by 20 U.S.C. § 1412(a)(3). [R. 358-359]. Plaintiff visited DOE's proposed school and, finding the IEP deficient, enrolled V.P. at iBRAIN. [R. 971]. Although Plaintiff and DOE were in communication in the months following the CSE, the parties dispute when DOE was notified of the unilateral placement. Plaintiff advised DOE of the unilateral placement at least as of January 2024. [R. 975]. DOE admits that as of February 15, 2024, it was aware of V.P.'s placement. [R. 698].

On March 20, 2024, Plaintiff sent DOE a formal Ten-Day Notice ("TDN"), rejecting the October 2023 IEP as inappropriate to meet her needs. [R. 536-7]. In the TDN, Plaintiff notified DOE of his intention to continue V.P.'s placement at iBRAIN and requested that DOE fund her pendency program/placement at iBRAIN during the due process proceedings, as the operative pendency placement. [*Id.*].

On April 29, 2024, DOE sent Plaintiff a prior written notice of the recommendation of special education services based upon the same October 2023 IEP and provided a proposed district school location. [R. 377]. No evaluations were requested or performed by DOE for the 2024-2025

recommendations. On June 14, 2024, Plaintiff sent a written notice of his disagreement with DOE's recommendations, requested an independent evaluation of V.P., and advised of his intent to unilaterally place V.P. at iBRAIN, the operative placement. [R. 189-190]. Plaintiff signed contracts for tuition and related services, including specialized transportation and 1:1 nursing, for the placement at iBRAIN. [R. 619-638].

On June 25, 2024, Plaintiff filed the first DPC against DOE alleging, among other things, that DOE did not offer V.P. a FAPE for the 2023-2024 ESY, that the unilateral placement of V.P. at iBRAIN was appropriate, and that equitable considerations favored a full award for V.P.'s placement at iBRAIN, including tuition, related services, special transportation, and nursing services, for the 2023-2024 ESY. [R. 166-177]. Further, Plaintiff requested that DOE re-convene the CSE and evaluate V.P. for an IEP. [*Id*.]. Plaintiff sought pendency placement at iBRAIN. [*Id*]. Further, Plaintiff requested attorneys' fees if he prevailed in the administrative action. [*Id*].

On July 12, 2024, Plaintiff filed a second DPC against DOE alleging, among other things, that DOE did not offer his child a FAPE for the 2024-2025 ESY, the unilateral placement of V.P. at iBRAIN was appropriate, and equitable considerations favored a full award for V.P.'s placement at iBRAIN, including tuition, related services, special transportation, and nursing, for the 2024-2025 ESY. [R. 177-188]. Again, Plaintiff sought pendency placement at iBRAIN, based on operative placement. [*Id*]. Further, Plaintiff requested attorneys' fees if he prevailed in the administrative action. [*Id*]. In the second DPC, Plaintiff requested the consolidation of the June 24, 2025, and July 12, 2024, DPCs. [*Id*].

On December 17, 2024, after a due process hearing which extended over several days on the consolidated cases, IHO Virginia Tillyard issued an FOFD in IHO Case No. 275751, finding that because DOE's IEP did not include any recommendations for related services and DOE

readily admitted that it would need to revise the IEP to reflect the results of further evaluations, DOE did not provide the Student a FAPE for either school year. [R. 48]. IHO Tillyard found that iBRAIN was an inappropriate placement under Prong II of the *Burlington/Carter* test for both school years, and denied reimbursement, because there was a lack of credible testimony. [R. 57]. Finally, IHO Tillyard also concluded, in an alternative finding, that equitable considerations weighed against the Parent for reimbursement for both school years, based on questions surrounding the transportation contracts and on her conclusion that V.P. did not require full-time 1:1 nursing services. [R. 65-67]. Plaintiff timely appealed IHO Tillyard's decision, filing a Notice of Intention to Seek Review on January 6, 2025. [R.78]. On January 27, 2025, Plaintiff timely filed an RFR and alleged that IHO Tillyard erred by finding that the Student's unilateral placement at iBRAIN was not appropriate and that the equities did not favor the Parent's claim for relief. [R.80-92].

In SRO Decision No. 25–055, dated June 26, 2025, SRO Bates reversed the IHO on both Prongs I and II of the *Burlington/Carter* test and ordered as follows:

> **IT IS ORDERED** that the IHO's decision, dated December 17, 2024, is modified by reversing those portions which found that iBrain was not an appropriate unilateral placement for the 2023-24 and 2024-25 school years; and

> **IT IS FURTHER ORDERED** that the IHO's decision, dated December 17, 2024, is modified by reversing those portions which found that equitable considerations weighed against the parent for the 2024-25 school year; and

> **IT IS FURTHER ORDERED** that the IHO's decision, dated December 17, 2024, is modified by reversing those portions which found that the transportation services were not appropriate for the 2024-25 school year; and

> **IT IS FURTHER ORDERED** that the district shall fund the iBrain tuition and related services per the iBrain annual enrollment contract for the 2024-25 school year; and

> **IT IS FURTHER ORDERED** that the district shall fund the transportation costs per the school transportation annual service agreement with Sisters Travel for the

2024-25 school year, reduced by 20 percent.

[R. 34].

## ARGUMENT

**I.    PLAINTIFF IS ENTITLED TO REIMBURSEMENT FOR THE UNILATERAL PLACEMENTS FOR THE 2023-2024 AND 2024-2025 ESYS**

### A.    NO DEFERENCE IS OWED TO THE SRO'S ADMINISTRATIVE FINDINGS ON PRONG III OF THE *BURLINGTON/CARTER* TEST

It is respectfully submitted that this Court should reverse SRO Bates' decision that equities did not favor Plaintiff for any reimbursement for the unilateral placement for the 2023-2024 ESY, for reimbursement of nursing services for the 2024-2025 ESY, and resulting in a reduction of an award for transportation.

This Court should not afford any deference to SRO Bates' determinations as to Prong III of the *Burlington/Carter* test, the balancing of equities. The Second Circuit has held that the "substantial deference" that the IDEA requires for matters of educational policy is inapplicable to the equitable balancing called for at the third step of the *Burlington/Carter* test. *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 332–33 (2d Cir. 2024). The Court held that a district court reviewing a claim under 20 U.S.C. § 1415(i)(2) errs as a matter of law when it fails to (1) engage in an independent review of the administrative record and (2) make a determination of the balance of the equities based on a preponderance of the evidence (internal quotation marks omitted). *Id*. Accordingly, this Court must conduct an independent review the SRO's determinations as to Prong III.

### B.    EQUITIES FAVOR PLAINTIFF FOR REIMBURSEMENT FOR ALL ELEMENTS OF THE PRIVATE PLACEMENT FOR THE 2023-2024 ESY

Equitable considerations favor Plaintiff for reimbursement of all elements of the unilateral

10

placement at iBRIAN for both the 2023-2024 and 2024-2025 ESYs. SRO Bates' conclusion that the equities did not favor Plaintiff for the two school years is not consistent with the objective evidence and must be reversed. Accordingly, this Court should order DOE to fund V.P.'s placement at iBRAIN for the 2023-2024 ESY, including tuition, specialized transportation, and nursing services, pursuant to the provider contracts. Further, this Court should order DOE to fund the nursing services and the full amount of specialized transportation for the 2024-2025 ESY.

Under Prong III of the *Burlington-Carter* test, the court must determine whether equitable considerations support the parent's claim, including whether the parent acted unreasonably or failed to cooperate with school officials. *M.C. v. N.Y.C. Dep't of Educ.*, 2015 U.S. Dist. LEXIS 93956, 2015 WL 4464102 at *4 (S.D.N.Y. July 15, 2015)(citing 20 U.S.C. § 1412(a)(10)(C)(iii)(III)). Under Prong III, tuition reimbursement to the parent may only be reduced or denied if the parent does not timely raise the appropriateness of an IEP, does not make the child available for evaluations, or otherwise acts unreasonably. *See C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014) (important to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA). In *C.L.*, the Second Circuit clarified: "once parents pass the first two prongs of the *Burlington-Carter* test, the Supreme Court's language in *Forest Grove*, stating that the Court retains discretion to 'reduce the amount of a reimbursement award if the equities so warrant,' suggests a presumption of a full reimbursement award." *Id.* at *2 (citing *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246–47 (2009)). Equitable considerations may include such things as the Parent's participation in IEP meetings, visits to the proposed school placements, and giving DOE a TDN of their unilateral placement decision. *D.A. v. New York City Dep't of Educ.*, 769 F.Supp.2d 403, 419-20 (S.D.N.Y. 2011). Conclusions under Prong III of the *Burlington/Carter* test must be

11

based on "substantive grounds," 8 N.Y.C.R.R. §200.5(j)(4)(i), and objective evidence. *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 105 (2d Cir. 2000).

Here, the undisputed facts establish that Plaintiff was cooperative with DOE. Plaintiff participated in the IEP meeting. [R. 959]. Plaintiff provided DOE with written consent to perform evaluations relative to V.P.'s needs for related services. [R. 849-850]. Plaintiff visited the district school recommended by DOE [R. 960]. DOE never requested or scheduled any evaluations of V.P., so there is no evidence that she did not cooperate with evaluations. Plaintiff was willing to enroll V.P. in the assigned district school if the school had been appropriate. [R. 1050].

The SRO erred in affirming the IHO's denial of any relief for the 2023-2024 ESY based on perceived discrepancies in the evidence regarding attendance. [R. 65-66, 21-28]. Specifically, there were questions as to when V.P. started attending iBRAIN in the 2023-2024 ESY. The testimony of the iBRAIN director and the Parent, as well as the iBRAIN educational plan and the enrollment and transportation contracts, established that V.P. started attending iBRAIN on October 11, 2023. [R. 26-27, 883-886, 971]. Although the enrollment and transportation contracts were signed at a later date, Plaintiff explained that two issues caused a delay in the signing of the contracts. [R. 1024-25]. First, there was a misspelling of his name in the contracts, so the contracts had to be revised and re-sent. [*Id.*]. Second, his wife does not read English and he travels for work, so there was a delay in his receipt of the contracts to review. [*Id.*]. The ample evidence demonstrated that V.P. started school on October 11, 2023, and reimbursement for the unilateral placement from that date through the end of the school year was warranted.

Even if the testimony is discounted regarding the start date in October 2023, there is ample evidence that V.P. was attending iBRAIN in January and February of 2024. Even if there were discrepancies or errors in the dates in the iBRAIN progress reports—which should not be held

against Plaintiff—those reports document the services V.P. was receiving and the progress she was making at least as of January 5, 2024. [R. 27]. Plaintiff testified that he recalled informing the DOE representative in January 2024 that V.P. was attending iBRAIN. [R. 975]. The DOE representative admitted that as of February 15, 2024, DOE was aware that V.P. was attending iBRAIN. [R. 673, 677].

The SRO further concluded that Plaintiff's delay in submitting the TDN until March 20, 2024, was a factor to consider for denying reimbursement. [R. 28-9]. The SRO noted that Plaintiff had been communicating with DOE since October of 2023 and that DOE admitted that it was on notice as of February 15, 2024, that V.P. was attending iBRAIN. [R. 28]. The SRO acknowledged that the delay in the formal TDN, in and of itself, may not warrant a denial of relief. [R. 29]. Here, there had been multiple communications between Plaintiff and DOE following the IEP Meeting and DOE admitted that it knew V.P. was attending iBRAIN as of February 15, 2024. Plaintiff complied with the purpose of § 1412(a)(10)(C)(iii)(I)(bb), and all relief should not be withheld for any perceived delay in providing the TDN of intent to unilaterally place V.P. at iBRAIN.

The Second Circuit has held that the relief granted under Prong III must "be appropriate in light of the purpose of the [IDEA]," which is "to 'ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs.'" *Ferreira*, 120 F.4th at 330 (quoting *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 244 (2009) (quoting 20 U.S.C. § 1400(d)(1)(A))). While courts have the discretion to fully deny reimbursement to a parent based on equities, the denial of all relief to Plaintiff for the 2023-2024 ESY is harsh, unwarranted, and not consistent with the purpose of the IDEA. The spirit and purpose of the IDEA is to protect the rights of disabled students and their families, not school districts. Here, DOE made no attempt to evaluate V.P. prior to creating an IEP, which contained

no related services for a student with undisputed complex disabilities. Plaintiff took reasonable steps in signing a consent to have DOE evaluate V.P., but DOE never did. Plaintiff then took reasonable steps in placing V.P. at an appropriate private placement and advised DOE. DOE still made no attempt to evaluate V.P. or revise the IEP. Although the evidence of the start date of attendance may be unclear or disputed, there is no dispute that DOE knew of the private placement as of February 15, 2024. Accordingly, even if the Court determines that some reduction is warranted as a result of the disputed evidence, at a minimum, equities favor an award of tuition and transportation for the portion of the school year that is not in dispute.

There is no evidence that Plaintiff was uncooperative with the IEP process for the 2023-2024 ESY. DOE clearly failed in its obligation to evaluate V.P. and prepare an IEP tailored to meet her needs and did nothing to correct that. In response to DOE's failures, Plaintiff took reasonable steps to place V.P. in an appropriate placement to have those needs met. The ample evidence demonstrated that V.P. started school on October 11, 2023, and reimbursement for the unilateral placement from that date through the end of the school year was warranted. If the Court concludes that there remain questions or ambiguities about the start date, then, at a minimum, the Court should order reimbursement from the date DOE admits that it knew V.P. was attending iBRAIN, February 15, 2024, through the end of the extended school year, including such late fees and interest as provided in the contracts.

### C.    EQUITIES FAVOR PLAINTIFF FOR REIMBURSEMENT FOR 1:1 NURSING FOR THE 2023-2024 AND 2024-2025 ESYS

Further, equities favor Plaintiff for the award of 1:1 nursing costs for both school years. There is no dispute that V.P. had severe medical needs or that V.P. required 1:1 nursing services following her gastronomy surgery to insert a G-tube for feeding. [R. 24]. Indeed, the SRO reversed the IHO's finding on Prong II regarding the appropriateness of the iBRAIN program and found

14

the entire program, including nursing services to support the student's health and medical needs, appropriate for V.P.'s educational needs. [R. 21]. Accordingly, the SRO determined that nursing services were necessary for V.P. to access her educational program, but questioned whether a 1:1 nurse was required or whether a school nurse could perform the required services. [R. 22-24]. The SRO reviewed the IHO's finding that the 1:1 nursing services were "excessive" under Prong III of the *Burlington/Carter* test and affirmed that the services were "excessive." [R. 24]. Because the conclusion was not based in law or fact, the SRO erred in denying reimbursement for nursing services.

The undisputed evidence supports a finding that V.P. required the services of a nurse for feeding, nutrition, and hydration following the placement of a G-tube in February 2023. [R. 936, 962]. The iBRAIN educational plan included 1:1 nursing services following the gastronomy surgery. [R. 936]. As noted by the SRO, there is no dispute that there was a physician's note ordering a 1:1 nurse for V.P. following the G-tube surgery on the basis that V.P. "was 'non-verbal and non-ambulatory with full dependence on a nurse' to monitor, prepare, and disconnect the student's g-tube; provide g-tube feedings twice a daily and ensure proper positioning of the student to prevent aspiration." [R. 23-4]. The SRO further noted that the physician's order required a nurse during transportation because "'monitoring of the [g]astronomy [wa]s needed since it [c]ould become dislodged' during the 30-minute drive." [*Id.*]. The DOE representative repeatedly admitted that V.P. had significant "medical needs" to the extent DOE determined she should be assigned to a classroom with "medically-fragile" students. [R. 822, 825, 828]. DOE further testified that "obviously, a nurse would be beneficial for her due to her medical needs." [R. 828]. DOE did not deny that V.P. might need a 1:1 nurse; it just never evaluated her for *any* related service. [*Id.*].

Despite the overwhelming evidence of V.P.'s need for a 1:1 nurse, the SRO concluded that

15

the school nurse could take care of all of V.P.'s medical needs. [R. 24]. The SRO based this conclusion on the note in the iBRAIN educational plan that the school nurse could perform the duties relative to V.P.'s G-tube *when the 1:1 nurse is not available*. [*Id.*]. The SRO's conclusion is based on impermissible speculation. Per the educational plan, iBRAIN made the decision that its school nurse has the professional capability and it was acceptable to the administration for the school nurse to assist in an emergency situation if the 1:1 nurse was not available. However, the evidence does not support the conclusion that the school nurse, who is charged with oversight of the entire school of children with disabilities, has the time to perform ***all of the G-tube-related duties*** for V.P. ***every day***, including twice-daily feedings, hydration throughout the day, monitoring the G-tube, preparing the G-tube before and after feedings, etc., at the detriment of providing services to other children. If that was the situation, 1:1 nursing after the gastronomy surgery and the physician's order for 1:1 nursing would need not be included in the educational plan.

Continuous nursing services constitute "related services" expressly mandated by the IDEA, and must be provided when necessary for a student with disabilities to attend school and receive a FAPE. *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 73–79 (1999). The administrative record supports V.P.'s need for 1:1 nursing services. Given that DOE failed to offer V.P. a FAPE for the 2023–2024 and 2024-20235 ESYs, it is difficult to see how equitable considerations favor denying V.P. funding for a necessary service that she received during those school years. The denial of funding for nursing was based on impermissible speculation, a failure to consider medical documentation, and the misapplication of the IDEA's requirement for individualized educational programming. This Court should grant Plaintiff full funding for these services following V.P.'s G-tube surgery in February of 2024.

As held in *Ferreira*, this Court owes no deference to the SRO's flawed equitable

16

determinations and must independently review the equities. Balancing the equities here supports reimbursement for the 1:1 nursing services V.P. received after the G-tube placement. There is no dispute that V.P. required continuous, specialized nursing care, which is crucial for ensuring both health and safety within the learning environment. There is no evidence that the school nurse could have provided the intensive services daily for one student for the entire school years at issue here, while performing her duties to all the remaining students with disabilities at the school, as a substitute for a 1:1 nurse. Without this support, V.P.'s capacity to fully engage in educational activities and make academic progress would be significantly compromised. It is crucial to recognize that the provision of 1:1 nursing services is not merely an ancillary support but a fundamental component of V.P.'s educational plan.

Accordingly, this Court should reverse the SRO's determination and award Plaintiff the requested relief, including such late fees and interest as provided in the contracts. In the alternative, if this Court finds that full reimbursement is inappropriate, then a proper reduction should be made rather than a complete denial of reimbursement/payment considering the Defendants' failure to provide V.P. with the FAPE mandated by the IDEA.

### D. EQUITIES FAVOR PLAINTIFF FOR REIMBURSEMENT FOR THE FULL AMOUNT OF TRANSPORTATION COSTS FOR THE 2024-2025 ESY

This Court should order DOE to fund the specialized transportation for the full amount of specialized transportation for the 2024-2025 ESY. There is no dispute that V.P. required specialized transportation to access her education. The SRO found that the transportation services provided were appropriate as part of the unilateral placement under Prong II of the *Burlington/Carter* test. [R. 21]. However, the SRO erroneously concluded that the equities supported a reduction of the reimbursement for the transportation for the 2024-2025 ESY by 20

percent. [R. 26-30, 33]. Because the equities favor Plaintiff, full reimbursement of the transportation costs should be awarded.

The IDEA specifically includes transportation, as well as any modifications or accommodations necessary in order to assist a student to benefit from his or her special education, in its definition of related services (20 U.S.C. § 1401[26]; *see* 34 CFR 300.34[a], [c][16]). In addition, State law defines special education as "specially designed instruction . . . and transportation, provided at no cost to the parents to meet the unique needs of a child with a disability," and requires school districts to provide disabled students with "suitable transportation to and from special classes or programs" (Educ. Law §§ 4401[1]; 4402[4][a]; *see* Educ. Law § 4401[2]; 8 NYCRR 200.1[ww]). Courts have consistently held that this subsection requires that DOE fund adequate transportation that ensures a student gets to and from school. So, "if the [Sisters Travel and Transportation] contracts are consistent with industry norms and Plaintiffs had no meaningful choice but to contract to pay for services without regard for whether students utilized the services," the IDEA would require DOE to fund that transportation. *See Davis v. Banks*, 2023 U.S. Dist. LEXIS 160092, 2023 WL 5917659, at *5 (S.D.N.Y. Sept. 11, 2023).

The SRO erred in reducing the transportation costs for the 2024-2025 ESY as "excessive" on the basis that Plaintiff testified that the transportation company occasionally transported V.P. to or from the hospital on weekdays. [R. 33]. The undisputed evidence supports full reimbursement. The transportation provider contract clearly requires a payment scheme based on a set number of school days, regardless of whether the student goes to school every day. [R. 626]. DOE does not dispute that this student required special transportation services and would have received such services through DOE had it offered a FAPE. [R. 363]. DOE offered no evidence that the arrangement provided by this private contract is not standard in the industry, that the costs

of the services were excessive, or that other transportation could be provided at a lesser rate. Further, the contract provides that the Parent is allowed to change a pick-up or drop-off location under limited circumstances without incurring any additional costs or expenses. [R. 625]. There is no evidence that the charges incurred by Plaintiff under the transportation contract were increased due to the change in transportation route.

Courts and SRO decisions have repeatedly held that expenses for contracted private services for unilateral placements cannot be parsed out for *pro rata* usage. The Second Circuit has held that "[t]he appropriate amount [of reimbursement] bears a relationship to the quantum of services that the state would have been required to furnish, as well as the fees charged by [the parents' chosen] providers for their services." *Still v. DeBuono*, 101 F.3d 888, 893 (2d Cir. 1996). The reduction of reimbursement because V.P. was occasionally picked up or dropped off at the hospital on a school day, per the terms of the contract and at no additional charge, is the equivalent of reducing reimbursement for days the student stayed home from school, a reduction soundly rejected by various SROs. *See, e.g.*, *Application of a Student with a Disability*, Appeal No. 22–138 (reversing an IHO's denial of private transportation funding because the contract required the family to pay for the service whether or not the student attended school in person on a particular day); *Cf. Application of a Student with a Disability*, Appeal No. 24-624 ("the IHO erred in ordering the district to fund the student's tuition at iBrain on a pro rata basis. Given the payment scheme outlined in the iBrain contract, there is no effective means or argument to order payment on a 'pro rata basis.'"). In SRO Appeal No. 22–138, SRO Harrington explained:

> Indeed, if the district had provided special transportation to the student, it is unlikely that the district would incur no transportation expenses on the school days that the student was unable to attend school. For instance, when a school district purchases a bus or other vehicle with which it transports students, it is not necessarily relieved of the obligation to maintain the vehicle at the ready, pay drivers, purchase insurance, or have available fuel in place, and public taxpayers bear those expenses

even if a student does not attend school on a particular day. Similarly, it is logical that the transportation company is required to have a vehicle and staff to transport the student each school day per the terms of the contract, even if the student did not utilize the service on a particular day and that the Parents are liable to the transportation company for those costs.

*Id.* at 16–17.[1] The same reasoning applies here.

Similarly, in *Abrams v. New York City Dep't of Educ.*, No. 20-CV-5085 (JPO), 2022 WL 523455, at *1 (S.D.N.Y. Feb. 22, 2022), the court granted the plaintiffs' motion for summary judgment for reimbursement, directing DOE to fund transportation services under the contracts, which "require them to pay fees irrespective of whether the students use the services." The *Abrams* Court noted: "This is not a situation where [the transportation company], which is not even a party to this action, is trying to skirt the rules or fraudulently obtain more money than it had contracted to receive under the Agreements." *Abrams*, 2022 WL 523455, at *5. The same is true in this case: neither the transportation provider nor Plaintiff acted fraudulently. Plaintiff entered into a valid contract for transportation services for V.P., and DOE presented no evidence of fraud or collusion. This is a monthly, contract-based service, where the contract determines payment, not daily attendance at the private school or specific usage.

It can be recognized that many students with disabilities at private placements, including V.P., are medically fragile and may miss school because of doctor's appointments, illness, or other health concerns. Parents of these students, just as parents of students with or without disabilities who are bussed to attend DOE schools and occasionally are absent, should not be financially penalized for not sending their children to school.

Accordingly, the SRO erred in reducing the contracted amount of the transportation services because V.P. would occasionally be picked up or dropped off at the hospital during the

---

[1] https://www.sro.nysed.gov/sites/sro/files/Decisions/2023/pdfversion/23-238.pdf.

week rather than at the school or home. Equities favor Plaintiff for full reimbursement for transportation for the 2024-2025 ESY, including such late fees and interest as provided in the contracts.

**E.    DOE'S CONDUCT MUST BE CONSIDERED IN THE ANALYSIS OF PRONG III OF THE *BURLINGTON/CARTER* TEST**

Finally, DOE's conduct should be considered in the balancing of equities. Courts in the Second Circuit require that both parties' conduct should be considered. *C.U. v. New York City Dep't of Educ.*, 23 F. Supp. 3d 210 (S.D.N.Y. 2014); *Z.A.R. v. City of N.Y.*, No. 19-cv-2615, 2022 U.S. Dist. LEXIS 176421 at *12 (E.D.N.Y. Sep. 27, 2022); *GB v. New York City Dep't of Educ.*, 145 F. Supp. 3d 230, 257 (S.D.N.Y. 2015)(noting that in addition to considering whether the parents' conduct was reasonable, other factors to consider include whether DOE "unreasonably delayed anything" and "the appropriateness of the DOE's conduct . . . . "). In *T.K. v. New York City Department of Education*, 810 F.3d 869, 879 (2d Cir. 2016), the Second Circuit criticized the IHO and SRO for focusing only on the conduct of the parents. *Cf. Mr. A. v. Greenwich Bd. of Educ.*, 3:15-cv-00203 (CSH), 2016 U.S. Dist. LEXIS 94431, *64 (D. Conn. July 21, 2016) ("In other words, none of Parents' actions had any causal role in the Board's failure to provide a FAPE."). The SRO erred in failing to consider DOE's conduct in the balancing of equities.

Here, DOE did nothing to conduct independent evaluations of V.P.'s needs before creating the admittedly deficient IEP. [R. 801-802]. DOE did not have any related providers, such as a physical therapist or occupational therapist, available at the IEP meeting to address related services. [R. 816]. Plaintiff consented to the CSE-performed evaluations and assessments. [R. 849-850]. Nonetheless, DOE never requested, scheduled, or performed any evaluations or assessments of V.P. for related services. DOE never conducted follow-up CSE meetings to assess V.P.'s evaluations performed at iBRAIN or to discuss obtaining evaluations for the 2024-2025 ESY,

while fully aware that the IEP it created and intended for the 2024-2025 ESY provided for no related services for V.P. [R. 668]. Even being aware of V.P.'s severe medical conditions, disabilities, and educational needs, DOE did nothing to otherwise alter or revise the October 2023 IEP—which provided absolutely **no services—**for the 2024-2025 ESY. DOE did not reconvene meetings after Plaintiff served the TDNs.

DOE's conduct must be considered in the balancing of the equities. Here, DOE did nothing to evaluate V.P. for services, which was the sole cause of the denial of FAPE. Accordingly, because the equities favor Plaintiff, reimbursement for the private placement at iBRAIN and the specialized transportation for the 2024-2025 ESY should be ordered and DOE should be ordered to fund the placement and related services pursuant to the contracts.

## II.    THE SRO'S DECISION COMPLETELY DENYING FUNDING FOR THE 2023–2024 SCHOOL YEAR RUNS AFOUL OF THE LETTER AND THE SPIRIT OF THE IDEA AND MUST BE REVERSED

This Court is empowered to provide a "just outcome for a disabled student." *T.Y.*, 584 F.3d at 418; *see also Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 917–18 (1st Cir. 1983) ("Section 1415(e)(2) [of the IDEA] is an express grant of authority to district courts to fashion all appropriate equitable relief"). In the underlying proceeding, the SRO denied complete funding to V.P. for the 2023-2024 ESY despite finding DOE denied FAPE. [R. 26-29]. This result is unnecessarily harsh, especially considering the purpose of the IDEA. 20 U.S.C. § 1400(d)(1). Moreover, the statute itself states that tuition reimbursement "may be reduced or denied," which suggests that Congress intended students to be reimbursed as the normal remedy, and that tuition should be denied or reduced only in extraordinary circumstances. *See* 20 U.S.C. § 1412(a)(10)(C)(iii). Indeed, the whole point of tuition reimbursement is to cover expenses that DOE ***should have borne*** in the first instance. *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 453–54 (2d Cir. 2014).

An appropriate review must first consider the injury and then craft a suitable remedy. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334, 338 (2016), as revised (May 24, 2016), as revised (May 24, 2016). This is the constitutional basis for judicial review and must inform the Court's approach to a just outcome.[2] Ultimately, the complete reduction in funding for the 2023–2024 school year is harsh and punitive. Here, DOE wholly evaded its responsibility to provide V.P. with *any public education* let alone a FAPE. Fortunately for V.P., this Court may right the wrong. *Carter*, 510 U.S. at 16 (holding that "courts enjoy broad discretion in . . . fashioning equitable relief."). This Court should follow the breadcrumbs where they lead—to DOE's failure to provide a FAPE in the first instance. By applying the correct legal standard, this Court will determine that Plaintiff prevailed under Prong III and is entitled to reimbursement.

## III.    PLAINTIFF IS ENTITLED TO AN AWARD OF PENDENCY FOR BOTH SCHOOL YEARS

During the pendency of the aforementioned judicial proceedings, the IDEA's "pendency provision," also known as the "stay-put provision," codified at 20 U.S.C. § 1415(j), "entitles a disabled child to 'remain in his then-current educational placement.'" *T.M. ex-rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014) (quoting 20 U.S.C. § 1415(j)). The core concern of the IDEA is to provide a continuous, uninterrupted education to children with disabilities; accordingly, the pendency provision "maintain[s] the educational status quo" of the child and ensures continuity of services while the parties' dispute is being resolved. *See id*. (citing

---

[2] IHO Farago found: "[R]eimbursement is neither the claim being made nor the entitlement being protected in any special education hearing. And the 'Burlington test' is neither a test nor made up of three prongs; it is simply a statement of the obvious: holding a school district accountable for the cost [of] a family's self-help is an exercise of the decision-maker's equitable remedial powers and, as such, requires, first, before there may be any remedy, a showing that a harm has been done (that there was in fact a denial of FAPE); second, and only if there has been such a denial, a remedy may be crafted to restore something akin to balance." IHO Case No. 185117 at 2.

*Mackey ex-rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004). "There is no separate requirement that a court determines the placement is appropriate; rather, the obligation arises automatically from a determination that the private school is the protected status quo during the period in which the dispute resolution process is ongoing." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123–24 (3d Cir. 2014) (quotation omitted). "The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy. *Casey K. ex-rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (citing *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)).

Although the IDEA does not specify which party pays when a child's pendency placement is at a private school, "the school district's obligation to do so is well established by case law." *M.R.*, 744 F.3d at 118–19 (quotation omitted); *see also Susquenita Sch. Dist. v. Raelee S. By &Through Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996) ("Without interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all."). The IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015).

It is undisputed that DOE failed to evaluate V.P. and then created an IEP for both school years that denied V.P. a FAPE because it failed to provide any related services. As such there was no IEP that could be implemented. "Courts tend to rely on the 'operative placement' factor"— which, as noted, looks to the child's placement at the time the due process complaint is filed—"in circumstances in which there was no prior-implemented IEP that might guide a determination of

24

a 'current educational placement.'" *Navarro Carrilo v. New York City Dep't of Educ.*, 384 F. Supp. 3d 441 (S.D.N.Y. 2019), *vacated and remanded sub nom. Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519 (2d Cir. 2020); *see also Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 190 (3d Cir. 2005) (explaining that, where no prior IEP has been implemented, a child's pendency placement is "the operative placement under which the child is actually receiving instruction at the time the dispute arises.").

Here, the undisputed evidence establishes, and the SRO found, that the unilateral program at iBRAIN was appropriate for both school years. The undisputed evidence establishes that the operative placement at which V.P. was actually receiving instruction at the time the disputes arose was iBRAIN, including related services, transportation, and 1:1 nursing. The undisputed facts demonstrate that DOE is obligated to pay for V.P.'s pendency placement at iBRAIN for both school years, including such late fees and interest as provided in the contracts.

## IV.    PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES

Plaintiff is entitled to a finding that he is the prevailing party at the administrative level and entitled to an award of reasonable attorneys' fees. A district court may award attorney's fees to a party who prevailed in an IDEA administrative proceeding. 20 U.S.C. § 1415(i)(3). A "prevailing party" is "one who has been awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001).

In the underlying administrative proceedings, Plaintiff prevailed on his claim that DOE denied V.P. a FAPE and that DOE is obligated to directly fund V.P.'s placement for the 2024-2025 ESY. *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 230 (3d Cir. 2017) (holding that parents who "obtain[ed] a court order requiring the school district to reimburse them for the costs of the child's 'stay-put' placements" were considered prevailing parties under the IDEA); *see also K.R. ex rel.*

25

*M.R. v. Bd. of Educ. of Brentwood Union Free Sch. Dist.*, 66 F. Supp. 2d 444, 453 (E.D.N.Y. 1999) (holding that the parent was a prevailing party because she obtained "stay-put" orders in those proceedings confirming her son's pendency rights). Because Plaintiff was the prevailing party in the underlying administrative proceedings, he is entitled to an award of attorneys' fees and should be granted leave to file his petition for such award.

## **CONCLUSION**

For the above reasons, Plaintiff asks the Court to grant her Motion for Summary Judgment in its entirety, as well as such other, further, and different relief as the Court deems just, proper, and equitable.

Dated:      January 16, 2026
            New York, NY

<div style="margin-left:40%">

Respectfully submitted,
Liberty & Freedom Legal Group
*Attorneys for Plaintiff*

By: /s/ Jeffrey Arlen Spinner
     Jeffrey Arlen Spinner, Esq. (JS22178)
     105 East 34th Street #190
     New York, NY 10016
     (646) 850-5035
     jeff@pabilaw.org

</div>

26

## <u>VERIFICATION OF WORD COUNT</u>

Pursuant to the Local Rules of the District Court for the Southern District of New York, the undersigned certifies that the word count of this brief, excluding those portions exempt therefrom, is 8,425 words. The brief is formatted with one-inch margins and 12-point Times New Roman font and complies with the Court's 8,750 word limit for memoranda.


Dated: January 16, 2025

     New York, NY

                        Respectfully submitted,
                        Liberty & Freedom Legal Group
                        *Attorneys for Plaintiff*

            By: <u>/s/ Jeffrey Arlen Spinner</u>
                      Jeffrey Arlen Spinner, Esq. (JS22178)
                      105 East 34th Street #190
                      New York, NY 10016
                      (646) 850-5035
                      jeff@pabilaw.org