UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
**PAVLO POPOVYCHENKO**, as Parent and Natural Guardian
of **V.P.**, and **PAVLO POPOVYCHENKO**, Individually,

                               Plaintiff,                         **25-cv-8906** (JMF)

-against-

**MELISSA AVILÉS-RAMOS**, in her official capacity as
Chancellor of the **NEW YORK CITY DEPARTMENT OF
EDUCATION**, and the **NEW YORK CITY DEPARTMENT
OF EDUCATION**,

                               Defendants.
------------------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

 

Liberty & Freedom Legal Group
105 East 34th Street, Suite 190
New York, NY 10016
(646) 850-5035

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

*Page(s)*

TABLE OF AUTHORITIES..................................................................................................... i

PRELIMINARY STATEMENT............................................................................................. 1

ARGUMENT............................................................................................................................ 1

    I.    PLAINTIFF IS ENTITLED TO PENDENCY FOR THE 2023-2024 AND 2024-2025 SCHOOL YEARS........................................................................................................... 1

    II.    THE EQUITIES FAVOR FULL REIMBURSEMENT FOR PLAINTIFF ........................ 3

    III.    PLAINTIFF IS ENTITLED TO FUNDING FOR 1:1 NURSING SERVICES FOR BOTH SCHOOL YEARS........................................................................................................... 7

    IV.    PLAINTIFF IS ENTITLED TO FULL FUNDING FOR TRANSPORTATION FOR THE 2024-2025 SCHOOL YEAR.......................................................................................... 8

    V.    THE SRO CORRECTLY FOUND THAT iBRAIN WAS AN APPROPRIATE PLACEMENT UNDER PRONG II.................................................................................. 9

CONCLUSION....................................................................................................................... 12

**TABLE OF AUTHORITIES**

*Page(s)*

**Cases**

*Abrams v. New York City Dep't of Educ., No. 20-CV-5085 (JPO)*,
  2022 WL 523455 (S.D.N.Y. Feb. 22, 2022) ................................................................9

*C.L. v. Scarsdale Union Free Sch. Dist.*,
  744 F.3d 826 (2d Cir. 2014) ......................................................................................5

*C.P. by v. Kankakee Cmty. Unit Sch. Dist.*,
  No. 05-2145, 2005 WL 8163374 (C.D. Ill. Aug. 29, 2005) ........................................1

*Carmel Cent. Sch. Dist.*,
  373 F.Supp.2d (S.D.N.Y. 2005) ..............................................................................5, 6

*Davis v. Banks*,
  2023 U.S. Dist. LEXIS 160092 (S.D.N.Y. Sep. 11, 2023) ..........................................4

*Florence County Sch. Dist. Four v. Carter*,
  510 U.S. 7 (1993) ......................................................................................................6

*Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*,
  368 F. Supp. 2d 313–25 (S.D.N.Y. 2005) ................................................................2

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*,
  397 F.3d 77–84 (2d Cir. 2005) ..................................................................................9

*M.G. v. D.C.*,
  246 F. Supp. 3d 1 (D.D.C. 2017) ..............................................................................4

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
  297 F.3d 195 (2d Cir. 2002) ......................................................................................1

*Navarro Carrilo v. New York City Dep't of Educ.*,
  384 F. Supp. 3d 441 (S.D.N.Y. 2019) ........................................................................2

*P.G. v. NYC DOE*,
  959 F. Supp. 2d 499 (S.D.N.Y. 2013) ........................................................................5

*Pardini v. Allegheny Intermediate Unit*,
  420 F.3d 181 (3d Cir. 2005) ...................................................................................2, 3

i

*S.W. v. New York City Dep't of Educ.*,
  646 F. Supp. 2d 346 (S.D.N.Y. 2009) ...............................................................................6

*Tucker v. Bay Shore Union Free Sch. Dist.*,
  873 F.2d 563 (2d Cir. 1989) ..............................................................................................6

*Ventura de Paulino v. Dep't of Educ.*,
  959 F.3d 519 (2d Cir. 2020) ...............................................................................................2

*Zvi D. v. Ambach*,
  694 F.2d 904 (2d Cir. 1982) ...............................................................................................1

**Statutes**

20 U.S.C. § 1415 ........................................................................................................9, 10

N.Y. C.P.L.R. 217 ............................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff filed her Motion for Summary Judgment [ECF No. 21] and Memorandum in Support [ECF No. 22] ("Plaintiff's Memo") on January 16, 2026. Defendants filed their Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment on March 20, 2026. [ECF No. 29]. For the reasons stated in Plaintiff's Memo and herein, this Court should grant Plaintiff's Motion for Summary Judgment in its entirety and deny Defendants' Cross-Motion for Summary Judgment.

## ARGUMENT

### I.    PLAINTIFF IS ENTITLED TO PENDENCY FOR THE 2023-2024 AND 2024-2025 SCHOOL YEARS

As discussed fully in Plaintiff's Memo, iBRAIN is V.P.'s pendency placement for the 2023-2024 and 2024-2025 school years. [ECF No. 22 at 23-25]. In response, DOE argues that Plaintiff's argument fails because he did not exhaust his administrative remedies by raising that argument with the SRO. [ECF No. 29 at 9-10]. However, the Second Circuit has consistently held that exhaustion is not required where parents seek to enforce pendency rights. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (affirming a preliminary injunction requiring pendency funding even though the underlying administrative proceedings were ongoing, because "given the time-sensitive nature of the IDEA's stay-put provision, an immediate appeal [of a violation] is necessary to give realistic protection to the claimed right"). Similarly, in *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982), the Court held that cutting off public funding during the pendency of proceedings would amount to a unilateral change in placement prohibited by the Act. As these cases establish, pendency rights are enforceable in federal court without requiring parents to complete the administrative process. *See also C.P. by v. Kankakee Cmty. Unit Sch. Dist.*, No. 05-2145, 2005 WL 8163374 (C.D. Ill. Aug. 29, 2005) (noting that because there is no

1

exhaustion of administrative remedies requirement to 20 U.S.C. § 1415(j), a federal court has jurisdiction to issue a "stay-put" or "pendency" order pending the outcome of the due process hearing).

DOE argues that iBRAIN is not V.P.'s operative placement for pendency purposes. It cites *Ventura de Paulino v. Dep't of Educ.*, 959 F.3d 519, 536 (2d Cir. 2020), for the proposition that the school district gets to decide how to implement pendency. [ECF No. 29 at 10-11]. However, *Ventura de Paulino* is inapplicable here. That case involved the parent moving the student from an agreed-upon placement to another private placement. 959 F.3d 519 at 523-24. The Court held: "A parent cannot unilaterally **transfer** his or her child and subsequently initiate an IEP dispute to argue that the **new** school's services must be funded on a pendency basis." *Id.* at 536 (emphasis added). Here, V.P. was not transferred to iBRAIN because she was never in a previously agreed-upon placement.

A student must have a pendency placement at all times; a student with no pendency placement at any time is an "impossible result." *See Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 324–25 (S.D.N.Y. 2005). "Courts tend to rely on the 'operative placement' factor"—which looks to the child's placement at the time the due process complaint is filed—"in circumstances in which there was no prior-implemented IEP that might guide a determination of a 'current educational placement.'" *Navarro Carrilo v. New York City Dep't of Educ.*, 384 F. Supp. 3d 441 (S.D.N.Y. 2019), *vacated and remanded sub nom. Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519 (2d Cir. 2020); *see also Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 190 (3d Cir. 2005) (explaining that, where no prior IEP has been implemented, a child's pendency placement is "the operative placement under which the child is actually receiving instruction at the time the dispute arises").

2

Here, the only possible pendency placement is iBRAIN, "the operative placement under which the child is actually receiving instruction at the time the dispute arises." *Pardini*, 420 F.3d at 190. While DOE argues that it offered a placement in November 2023, that placement was never agreed upon, and was found to have failed to provide FAPE by both the IHO and SRO. DOE cites *Ventura de Paulino* for the proposition that a parent unilaterally places a student at their own risk. [ECF No. 29 at 11]. However, that principle does not address pendency. It simply means that, if a parent ultimately fails **on the merits** of his dispute, he is not entitled to reimbursement for the unilateral placement. Here, the SRO ruled that iBRAIN was appropriate, and DOE has not appealed that ruling.[1] iBRAIN is V.P.'s pendency placement for the 2023-2024 and 2024-2025 school years, and DOE's arguments otherwise must fail.

## II.    THE EQUITIES FAVOR FULL REIMBURSEMENT FOR PLAINTIFF

The SRO erred, under Prong III, in denying all reimbursement for the 2023-2024 school year, including 1:1 nursing and special transportation; in denying reimbursement for 1:1 nursing for the 2024-2025 school year; and in limiting reimbursement for special transportation for the 2024-2025 school year to 20%. In fact, the equities support full reimbursement for Plaintiff for both school years.

DOE acknowledges that the administrative officers' findings under Prong III must be based on substantive grounds and objective evidence, but then cite the IHO's findings that "the potential for third party collusion cannot be ruled out," and "potential interrelatedness of third parties." [ECF No. 29 at 14]. That is not substantive grounds or objective evidence: it is pure speculation. There

---

[1] While the school-year specific factual findings under Prong III are being litigated in this action, the unappealed SRO finding that iBRAIN is appropriate under Prong II establishes iBRAIN as V.P.'s pendency placement going forward. Prong III considerations may be made on the merits of disputes in future school years, but those considerations do not affect the establishment of iBRAIN as V.P.'s pendency placement.

must be evidence of collusion; it is not sufficient that it simply is within the realm of possibilities and cannot be ruled out.

DOE quotes *Davis v. Banks*, 2023 U.S. Dist. LEXIS 160092, at *18 (S.D.N.Y. Sep. 11, 2023) in arguing: "There is genuine concern that providers could be [sic] 'incentivize providers . . . to intentionally inflate in their submissions to the DOE the estimated costs of their services and then act with indifference to the actual provision of services because DOE will pay regardless." [ECF No. 29 at 14]. However, the *Davis* Court was simply noting that this was a legitimate concern that should be weighed. The Court did not make a determination, but remanded for the administrative officers to weigh the competing concerns. 2023 U.S. Dist. LEXIS 160092, at *18. Here, the administrative officers never got beyond hypotheticals that "cannot be ruled out," but made a final decision based upon them anyway. Such speculative, hypothetical concerns do not constitute the substantive grounds and objective evidence that DOE concedes is required for a reduction of reimbursement under Prong III.

DOE argues that the untimeliness of Plaintiff's ten-day notice ("TDN") doomed his claims for reimbursement. [ECF No. 29 at 15-16]. DOE acknowledges that the purpose of the TDN is to give a school district the opportunity to address concerns with the IEP, and argues that it was "deprived . . . of that opportunity." [*Id.* at 15]. What DOE fails to acknowledge is the fact that, after receiving the TDN, it recommended a placement for the 2024-2025 school year based on **the same October 2023 IEP**. [R. 377]. DOE cannot argue that it would have addressed Plaintiff's concerns had it received the TDN timely when it did not address those very concerns in the recommendation for the next school year, **40 days** after receiving the TDN.

As then-Judge Ketanji Brown Jackson held in *M.G. v. D.C.*, 246 F. Supp. 3d 1, 13 (D.D.C. 2017): "When a school district fails to show any substantive harm caused by a parent's violation

of the notice provision, a court may not deny reimbursement on the basis of notice alone" (quoting *Schoenbach v. D.C.*, 309 F. Supp. 2d 71, 85 (D.D.C. 2004)) (citing *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811–12 (5th Cir. 2003)). Here, DOE cannot argue that it suffered harm by virtue of the lateness of Plaintiff's TDN. The only harm DOE claims is that it was "deprived" of the opportunity to cure the defects set forth in the TDN. This argument is foreclosed by the fact that DOE did not cure the defects in the 2024-2025 IEP which it created **40 days** after receiving the TDN. DOE clearly would not have cured the defects within the ten-day window for the 2023-2024 school year.

Similarly, DOE argues that Plaintiff was uncooperative by not timely giving it notice of V.P.'s enrollment at iBRAIN. [ECF No. 29 at 16-19]. However, as set forth above, the untimeliness of notice was harmless as DOE never did anything with the notice even when it did receive it.

DOE also suggests that Plaintiff was disqualified from reimbursement because he had no intention of sending the Student to public school. [ECF No. 29 at 17-18]. DOE cites *P.G. v. NYC DOE*, 959 F. Supp. 2d 499, 516 (S.D.N.Y. 2013) for the proposition that "when parents did not intend to enroll their child in the public school 'courts have indicated that such parents cannot meet their burden of demonstrating that the equities tip in their favor.'" [ECF No. 29 at 18]. However, that case predates the Second Circuit case *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014), which held that, when parents cooperate with the school district, their "pursuit of a private placement [is] not a basis for denying their tuition reimbursement, even assuming . . . that the parents never intended to keep [the student] in public school."

The other cases DOE cites are likewise inapposite. It cites *Carmel Cent. Sch. Dist.*, 373 F. Supp. 2d 402 (S.D.N.Y. 2005). [ECF No. 29 at 17-18]. However, *Carmel* did not involve a TDN; it involved the failure to notify the district that the student even needed special education services.

That is not the issue here. *Tucker v. Bay Shore Union Free Sch. Dist.*, 873 F.2d 563 (2d Cir. 1989) is completely irrelevant. The private school in that case was inappropriate because it was not on the state's approved list. The court held that the parents should have worked with the DOE to find an approved school before unilaterally placing the student. *Id.* at 567. The requirement that a private placement be approved by the state was abrogated in *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993). In *Carter*, the Supreme Court explicitly held that "[p]arents' failure to select a program known to be approved by the State in favor of an unapproved option is not itself a bar to reimbursement." *Id.* at 14. Here, the SRO found that iBRAIN was appropriate.

DOE relies on *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 364 (S.D.N.Y. 2009). [ECF No. 29 at 18]. However, that Court's focus was on the parent's failure to give notice. As set forth above, DOE has failed to show any harm resulting from any lack of timely notice.

DOE argues that Plaintiff was uncooperative by withholding evaluations from DOE. [ECF No. 29 at 19-20]. DOE cites *Carmel*, 373 F.Supp.2d at 418, in support of its argument. [ECF No. 29 at 19]. Again, that case involved the failure to notify the school district that the student even needed special education services. In that case, the Court noted that because of the late notice and lack of records, "the CSE was unable to act on the parents' request for services prior to the start of the school year." 373 F.Supp.2d at 406. The CSE "quickly realized that additional and updated achievement testing would be needed before it could even begin to formulate an IEP for" the student. *Id.* That is not the case here; the CSE formulated an IEP.

What DOE fails to acknowledge is that here, Plaintiff provided DOE with written consent to perform evaluations relative to V.P.'s needs for related services, [R. 849-850], and that DOE failed to perform any evaluations. It is DOE's obligation to evaluate the student, and DOE's burden to prove it provided a FAPE. It cannot simply blame the Parent for not providing evaluations they

6

may have had in hand, and justify the denial of all reimbursement because of such alleged failure. The ultimate responsibility to perform evaluations is DOE's, and it failed to do so here.

### III. PLAINTIFF IS ENTITLED TO FUNDING FOR 1:1 NURSING SERVICES FOR BOTH SCHOOL YEARS

It has been well established that V.P. had severe medical needs and required 1:1 nursing services following her gastronomy surgery to insert a G-tube for feeding. [R. 24]. In challenging V.P.'s entitlement to reimbursement for 1:1 nursing services, DOE argues that the IHO properly denied nursing services because the nursing order was on iBRAIN letterhead and was not authenticated. [ECF No. 29 at 20-21]. Neither the IHO nor DOE provide any authority to support this conclusion. Moreover, there is evidence that the school nurse updated V.P.'s health plan on February 7, 2024, for gastronomy, to include a 1:1 nurse. [R. 935-36]. Further, the Parent himself testified that V.P. required a 1:1 nurse because she cannot eat and has a G-tube which only a nurse can monitor. [R. 962]. He also testified that V.P. could start coughing and throw up, and could require sedative injections. [R. 963]. This evidence supports a finding that V.P. required 1:1 nursing in order to access her education.

DOE credits the administrative officers' conclusions that the school nurse could provide the necessary nursing services. [ECF No. 29 at 21]. A review of the SRO decision indicates that this finding is based on iBRAIN's education plan stating that, when the 1:1 nurse is not available, the school nurse will administer medications and service the G-tube. [R. 25]. This argument was thoroughly addressed in Plaintiff's Memo, and is unaddressed by DOE. [ECF No. 22 at 16]. In short:

> the evidence does not support the conclusion that the school nurse, who is charged with oversight of the entire school of children with disabilities, has the time to perform all of the G-tube-related duties for V.P. every day, including twice-daily feedings, hydration throughout the day, monitoring the G-tube, preparing the G-tube before and after feedings, etc., at the detriment of providing services to other

7

children. If that was the situation, 1:1 nursing after the gastronomy surgery and the physician's order for 1:1 nursing would need not be included in the educational plan.

[*Id.*].

DOE also notes the FOFD's finding that V.P.'s parents and grandmother take care of her at home. [ECF No. 29 at 21]. However, first, this finding is under the IHO's Prong II analysis, which the SRO reversed. [R. 60, 21, 32]. Second, DOE does not explain how the fact that V.P.'s immediate family is able to take care of her at home somehow means she does not need a nurse while at school all day, with dozens of other medically fragile students and adults who do not know V.P.'s needs like her family does and cannot provide the immediate care that parents are able to provide in the home.

Importantly, the SRO found, under Prong II, that iBRAIN was appropriate. iBRAIN's program includes a 1:1 nurse. The SRO then turned around and found that a 1:1 nurse was excessive, under Prong III. This finding was contrary to his finding under Prong II, and should be reversed.

## IV.    PLAINTIFF IS ENTITLED TO FULL FUNDING FOR TRANSPORTATION FOR THE 2024-2025 SCHOOL YEAR

The SRO erroneously reduced transportation services for the 2024-2025 school year by 20%. [R. 34]. DOE argues that the reduction was appropriate because transportation services at iBRAIN were excessive. [ECF No. 29 at 22]. In support of this conclusion DOE notes that the transportation contract was signed after the services began. [*Id.*]. First, this does not raise questions as to whether the services were provided, especially as the Parent gave a plausible explanation as to why the contract was signed later.[2] Moreover, DOE claims that transportation services were

---

[2] Plaintiff provided a twofold explanation for the delay in signing the transportation contract. First, his name was misspelled in the contracts, so they had to be revised and re-sent. [R. 1024-25]. Second, there was a delay in Plaintiff's receipt of the contract because his wife does not read English and he travels for work. [*Id.*].

excessive because the Parent could not provide specific details about pickup and drop-off times. This lack of detail does not suggest that transportation services were excessive. No one disputes that V.P. attended iBRAIN, which the SRO concluded was appropriate, and that she requires special transportation. [R. 363]. It simply does not make sense that transportation services are "excessive" because the Parent could not testify as to the specific times the Student was picked up and dropped off. She used special transportation to go to and from school, and that is undisputed. Pickup and drop-off times would not and should not affect the cost of transportation services.

DOE argues that transportation was excessive because the transportation company permitted transport to the hospital on weekdays. [ECF No. 29 at 22-23]. DOE completely ignores Plaintiff's argument as to this point in his Memo. [ECF No. 22 at 18-21]. DOE provides no evidence that the contractual terms are improper, or that the cost was increased at all as a result of different pick-up or drop-off locations. As argued fully in Plaintiff's Memo, this Court has directed reimbursement of transportation services based on a contract with the same provisions as the contract involved here. [ECF No. 22 at 19-20] (citing *Abrams v. New York City Dep't of Educ.*, No. 20-CV-5085 (JPO), 2022 WL 523455 (S.D.N.Y. Feb. 22, 2022)).

## V.    THE SRO CORRECTLY FOUND THAT iBRAIN WAS AN APPROPRIATE PLACEMENT UNDER PRONG II

The SRO correctly reversed the IHO's findings that iBRAIN was not an appropriate placement for the 2023-2024 and 2024-2025 school years under Prong II. [R. 19-21, 31-32]. DOE now argues that the SRO erred. [ECF No. 29 at 23-25]. But this argument is not properly before this Court, and should be rejected.

A party aggrieved by an SRO's decision can appeal to state or federal court. 20 U.S.C. § 1415(i)(2)(A). The statutory deadline for filing such appeal is four months from the date of the decision. *See Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 83–84 (2d

9

Cir. 2005); N.Y. C.P.L.R. 217 (McKinney); 20 U.S.C. § 1415(i)(2)(B). Here, SRO Decision No. 25–055 was issued on June 26, 2025. [R. 34]. Thus, the statutory deadline to challenge that decision was October 25, 2025. DOE raised their claim in the form of a Counterclaim filed on December 5, 2025. Thus, it was untimely.[3] Accordingly, DOE may not now challenge, on summary judgment, the SRO's Prong II conclusion that iBRAIN was an appropriate placement for V.P. for both school years.

In any event, DOE's Prong II argument fails on the merits. DOE's entire argument is that the SRO failed to defer to the IHO's credibility determinations. [ECF No. 29 at 23-25]. DOE does nothing more than set forth the IHO's credibility findings and then conclude that "[b]ecause the parent lacked credible witness [sic], they failed to adduce evidentiary proof to sustain their burden." [*Id.* at 24]. However, as DOE concedes, the SRO considered the IHO's credibility determinations as to the 2023-2024 school year and concluded that they "were firmly rooted in the evidentiary record and will not be disturbed." [R. 28]. The SRO accurately concluded that the argument regarding "certain discrepancies and inconsistencies in the hearing record . . . does not go to the appropriateness of iBrain," but may be considered under Prong III. [R. 26].

DOE makes the legally flawed leap to conclude that, because the IHO identified certain credibility issues with some of the testimony of Plaintiff's witness, the witness's **entire** testimony must be discarded wholesale. That simply is not the case. The SRO did not quibble with the IHO's credibility determinations, but rather, the legal conclusion the IHO drew from those determinations. In fact, the SRO thoroughly discussed the testimony of iBRAIN's deputy director, as well as apparent inconsistencies in some of the documentary evidence. [R. 26-27]. These discrepancies related to when V.P. began attending iBRAIN, whether V.P. was in attendance

---

[3] Plaintiff presented this argument to the Court in his March 11, 2026, Answer and Affirmative Defenses. [ECF No. 28 at 4].

physically or was receiving services remotely, and when she began receiving related services. [R. 27]. The SRO correctly concluded that these discrepancies were not related to the appropriateness of iBRAIN. The evidence on that point was sound.

Unlike the 2023-2024 school year, the SRO noted that the evidence related to the 2024-2025 school year was necessarily limited by the timing of the IHO proceedings. [R. 31]. The SRO relied upon the iBRAIN education plan, a progress report, and the testimony of iBRAIN's deputy director in concluding that iBRAIN was an appropriate placement for that school year. [R. 31-32]. Because there were no "discrepancies and inconsistencies" as to that evidence, the SRO correctly credited it. Again, the SRO was not required to discard *all* evidence because he found *some* evidence problematic. The SRO did not "implicitly overturn[]" the IHO's credibility determinations; he simply, correctly, limited those determinations to the issues to which they related.

In fact, the evidence of the appropriateness of iBRAIN was sufficient and sound. For the 2023-2024 school year, the SRO thoroughly reviewed iBRAIN's education plan, affidavit and live testimony of iBRAIN's deputy director, and various other documents, including V.P.'s daily schedule at iBRAIN. [R. 20-21]. Based on this evidence, the SRO correctly concluded that "the student's iBrain program was appropriate to meet her needs for the 2023-24 school year." [R. 21]. With respect to the 2024-2025 school year, while noting that the record was limited because of the timing of the impartial hearing, the SRO thoroughly reviewed the deputy director's testimony, an updated iBRAIN education plan, and a fourth quarter progress report. [R. 31-32].

Simply put, this evidence was sufficient to establish that iBRAIN was an appropriate placement, and the SRO did not err.

11

**CONCLUSION**

For the foregoing reasons and those set forth in Plaintiff's Memorandum of Law in Support of his Motion for Summary Judgment, the Court should grant Plaintiff's Motion for Summary Judgment in its entirety, and deny Defendants' Cross-Motion for Summary Judgment in its entirety.

Dated: April 10, 2026
New York, New York

Respectfully submitted,

LIBERTY & FREEDOM LEGAL GROUP
*Attorneys for Plaintiff*

By: /s/ Nicole Lancia
Nicole Lancia, Esq.

Liberty & Freedom Legal Group, Ltd.
105 East 34th Street,  #190
New York, NY 10016
(646) 850-5035
nicole@pabilaw.org

12

## <u>VERIFICATION OF WORD COUNT</u>

Pursuant to the Local Rules of the District Court for the Southern District of New York, the undersigned verifies that the word count of this document, excluding those portions exempt therefrom, is 3,771 words, which is less than the 8,750-word limit, and the font is Times New Roman 12 point.

Dated: April 10, 2026
New York, New York

/s/   Nicole Lancia                        .
Nicole Lancia, Esq.
Liberty & Freedom Legal Group
Attorneys for the Plaintiff
300 East 95th Street, #130
New York, New York 10128
nicole@pabilaw.org

13